**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

CESAR GARCIA-MAYA,

      Petitioner,

      v.

TODD BLANCHE, *et al.*,

      Respondents.

Case No. 2:26-cv-01513-RFB-BNW

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Cesar Garcia-Maya's First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See generally First Amended Petition, ECF No. 9 [hereinafter, "Petition" or "Am. Pet."]. For the following reasons, the Court grants the Petition.

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Federal Respondents (also referred to herein as "the government") are detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), a provision of the Immigration and Nationality Act ("INA") that generally[1] mandates detention without the possibility of release on bond or parole during the pendency of a noncitizen's removal proceedings. See generally Federal Respondents' Response to Amended Petition, ECF No. 14 [hereinafter, "Return"].[2] Petitioner asserts that his detention under

---

[1] Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

[2] Respondent John Mattos, Warden of NSDC, filed a Response to Petitioner's First Amended Petition for Writ of Habeas Corpus, asserting that the has no independent authority to release Petitioner and takes no position on the Petition's merits. See Mattos Response to Amended Petition, ECF No. 11.

§ 1225(b)(2)(A) violates the INA and the Due Process Clause of the Fifth Amendment, because he is properly detained under § 1226(a), and his arrest and detention without required procedures violates his right to due process. See Petition at 6–11.[3]

The government first invokes its novel statutory interpretation of § 1225(b)(2)(A) as the basis for Petitioner's detention. See Return at 1–2. The government does not assert any individualized justification but insists Petitioner's detention is mandated by statute regardless of his individual circumstances. See id. In addition, the government asserts that the Petition should be denied for failure to exhaust administrative remedies; in doing so, the government argues that "Petitioner should have exhausted his administrative remedies by appealing the IJ's decision to the BIA before seeking the federal district court to review the IJ's decision." Return at 3. However, the Court is unaware of any IJ decision concerning bond, as the government's decision to detain Petitioner under a statute that categorizes his detention as mandatory without opportunity for release on bond is the very basis for this Petition. See Petition at 10. Further, as this Court has repeatedly held, "[n]either the habeas statute, 8 U.S.C. § 2241, nor the relevant sections of the INA require petitioners to exhaust administrative remedies before filing petitions for habeas corpus." Jacobo-Ramirez v. Noem, 817 F. Supp. 3d 1037, 1050 (D. Nev. 2025). Thus, exhaustion is not a bar to this Court's jurisdiction, and to the extent the government is asserting exhaustion as a prudential matter, this Court waives exhaustion as futile: the government itself has failed to provide the administrative remedies they indicate this Petitioner should pursue, despite this Court's classwide order to the contrary.

On March 30, 2026, the Court issued a classwide judgment declaring the government's interpretation of § 1225(b)(2)(A) unlawful under the INA, because undocumented noncitizens like Petitioner, who are arrested by ICE officers in the interior of the country and alleged to have entered without inspection or parole, are subject to detention under § 1226(a) and its implementing regulations, 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. See Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *33 (D. Nev. Mar. 30, 2026).

_____

[3] Because the Court grants Petitioner's requested relief on Claim One (statutory and due process grounds), it need not reach Petitioner's additional claims for release under the Fourth Amendment and Administrative Procedures Act ("APA"). See Petition at 11–16.

Pursuant to § 706(2)(A) of the Administrative Procedures Act ("APA"), the Court further vacated the government's mass immigration detention policies under § 1225(b)(2)(A), which were encapsulated in an internal memorandum issued to U.S. Immigration and Customs ("ICE") on July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" [hereinafter, "the July 8th Memo"] and the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See id.

As discussed below, and as the government concedes, the Court finds that Petitioner is a member of the Jacobo-Ramirez Class. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and vacatur. Further, the Court finds Petitioner's arrest and ongoing detention without the procedural protections required under § 1226(a) violates his constitutional right to due process. Returning to the government's exhaustion argument briefly, the Court additionally finds that exhaustion is futile as it would not cure the unlawful procedures used by the government as to Petitioner that render his detention unlawful from its inception. Finally, the Court finds the appropriate remedy in this case is Petitioner's immediate release from custody, a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A), and an order requiring the government to follow appropriate procedures in the event they seek to re-detain Petitioner under § 1226(a).

## I.    CLASS MEMBERSHIP

The Court begins with whether Petitioner is a member of the Jacobo-Ramirez Class, which is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, 2026 WL 879799, at *4 [hereinafter "Class Members"].

The government concedes Petitioner is a Class Member. See Return at 1, ECF No. 14.

Based on the undisputed verified factual allegations in the Petition, and the documentary evidence supplied by the parties, the Court finds that Petitioner satisfies the criteria for Jacobo-Ramirez Class Membership. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who was arrested and detained by ICE on February 3, 2026, and he remains detained. See Petition at 5, ECF No. 9. Second, he is in removal proceedings before the Las Vegas Immigration Court, which is within the District of Nevada. See Petition, Ex. B (DHS Form I-862 Notice to Appear) [hereinafter "NTA"], ECF No. 9-2. Third, the Department of Homeland Security (DHS) alleges that Petitioner entered the United States without inspection, admission, or parole. See id. (alleging Petitioner is "an alien present in the United States who has not been admitted or paroled."). Fourth, Federal Respondents are detaining Petitioner under § 1225(b)(2)(A) and they do not assert that he is or will be subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Return at 1–2. Fifth, Petitioner was most recently arrested well within the country's interior, not while he was arriving in the United States. See id., Ex. A at 5–6 (DHS Form I-213), ECF No. 14-1.

In sum, Petitioner is clearly a Jacobo-Ramirez Class Member entitled to enforcement of the declaratory judgment and vacatur afforded to the Class by this Court.

The declaratory judgment entered in favor of Jacobo-Ramirez Class Members has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201. In other words, the "declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). As parties to Jacobo-Ramirez, Federal Respondents are therefore obligated to comply with that judgment. See, e.g., Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments.").

The government offer no explanation for their continued reliance on § 1225(b)(2)(A) to detain Petitioner in violation of this Court's binding judgment. See Haaland v. Brackeen, 599 U.S.

255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by *res judicata*.") (citation modified); id. ("This form of relief conclusively resolves the legal rights of the parties.") (citation modified). Thus, Petitioner was forced to seek enforcement of the Jacobo-Ramirez judgment through this habeas petition, and the Court must reiterate its finding that Petitioner's ongoing detention is unlawful under the INA, because his detention is governed by § 1226(a) and its implementing regulations. See Jacobo-Ramirez, 2026 WL 879799, at *33.

## II.    DUE PROCESS

As an initial matter, the government provides only a partial response to Petitioner's claim that his detention without the procedures required under § 1226(a) violates due process. See Return at 7, ECF No. 14. Petitioner argues that his detention by Federal Respondents violated due process from its inception, in part, because he was arrested pursuant to an unsigned, and therefore unlawful warrant. See Petition at 3, ECF No. 9. Petitioner attached to his Amended Petition an I-200 warrant provided to him by Federal Respondents in compliance with this Court's initial Service Order. See id., Ex. A (DHS Form I-200 Administrative Warrant issued February 3, 2026), ECF No. 9-1; see also Service Order at 3, ECF No. 3 (ordering document production, including any existing I-200s, from the government to the FPD be completed by May 27, 2026). Attached to its Return, filed nearly three weeks after this Court's document production deadline, the government produced, for the first time, a signed Form I-200 Administrative Warrant allegedly issued to Petitioner. See Return, Ex. C (Form I-200 Administrative Warrant issued February 2, 2026), ECF No. 14-3. Importantly, this new I-200 differs from the previously produced I-200 in many ways: (i.) the later-produced I-200 lacks a file number; (ii.) one document is dated February 2, 2026, and one is dated February 3, 2026; (iii.) despite allegedly being issued only one day apart from one another, the two documents state different bases for the probable cause determination; (iv.) the immigration officers and/or staff listed on the documents differs: the February 2 warrant lists E. Humes and DHS Support Staff Misael Acuna, whereas the February 3 warrant lists Deportation Officer "S 11954 Leak" and SDDO Anna Aegerter; and (v.) perhaps most alarming based on the high number

of ICE arrests as of late, the named alleged-noncitizen differs: the February 3 warrant states Petitioner's full name (as reflected on this Court's docket) "Cesar Garcia-Maya," whereas the February 2 warrant states only "Cesar Garcia." Compare Petition, Ex. A, with Return, Ex. C.

Because of these differences, and because the government has provided absolutely no explanation for—or even acknowledgement of—these dueling I-200 forms, no explanation for its tardiness in producing the signed I-200, no authentication as to the later-produced warrant, nor any confirmation or argument that the signed warrant complies with the applicable statute and regulations,[4] the Court finds that Respondents cannot establish that Petitioner was lawfully arrested. Moreover, there is no dispute as to the lack of production of any initial custody determination (Form I-286), which was also ordered to be produced by the government to the FPD by May 27, 2026 (if it exists as to Petitioner). See Service Order at 3.

Importantly, the classwide due process claim has not yet been litigated in Jacobo-Ramirez. See Jacobo-Ramirez, 2026 WL 879799, at *2 ("Plaintiffs also claim that the [the government's detention] policies . . . violate their due process rights under the Fifth Amendment (Ground IV), but they do not currently seek summary judgment on those claims."). The Court thus turns to the merits of Petitioner's due process claim.

Class Members and similarly situated noncitizens are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez v. Noem, 817 F. Supp. 3d. 1037, 1053–54 (D. Nev. 2025). The Due Process Clause guarantees that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) (emphasis added). Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention,

---

[4] The Court reminds Federal Respondents that, per the governing regulations, "[a] warrant of arrest may be issued *only by those immigration officers listed in § 287.5(e)(2)* of [Chapter I of Title 8 of the U.S. Code] and may be served only by those immigration officers listed in § 287.5(e)(3) of [Chapter I of Title 8 of the U.S. Code]." 8 C.F.R. § 236.1(b)(1) (emphasis added).

or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." Yamataya v. Fisher, 189 U.S. 86, 100–01 (1903).

Section 1226(a) and its regulations guarantee noncitizens detained under that provision multiple levels of "substantial procedural protections" against the erroneous deprivation of their liberty. See Jacobo-Ramirez, 2026 WL 879799, at *6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022)). These protections include, inter alia, the requirement that a noncitizen cannot be arrested without an administrative warrant or detained without notice of the basis for their detention through a notice to appear, both of which must be signed and served by designated immigration officers; the requirement that an ICE officer with designated authority conduct an initial custody determination at the outset of detention, wherein the noncitizen has an opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"; and the right to seek review of an ICE officer's initial custody determination through a prompt bond hearing before an immigration judge ("IJ") based on individualized evidence, wherein the IJ will order release on bond if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." See id. at *6–7 (citing 8 C.F.R. §§ 236.1(c)(8); 236.1(d)(1); 287.5(d); 287.8(c)(2)(i)-(ii); 1003.19); (quoting Rodriguez Diaz, 53 F.4th at 1196) (citation modified).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures to ensure its detention authority respects constitutional limits. Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026) ("[T]he government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community.") (citing Zadvydas, 533 U.S. at 690). As a result, noncitizens like Petitioner are indiscriminately arrested by ICE officers in the interior of the country and subjected to months of detention without

procedures to ensure the government considers—let alone substantiates—whether it has a constitutionally recognized interest in depriving the detainee of their liberty.

Indeed, ICE's § 1225(b)(2)(A) detention policy, as evidenced by the July 8th Memo, specifically instructs ICE agents against issuing any "Form I-286, Notice of Custody Determination" to noncitizens like Petitioner, because individual custody determinations are only required under § 1226 by regulation. See Jacobo-Ramirez, 2026 WL 879799, at *8 (citing the July 8th Memo, 8 C.F.R. § 236.1(c)(8)). This Court vacated (i.e., set aside) that policy under the APA on March 30th, see id. at *33, yet as Petitioner's circumstances illustrate, the government is still detaining Class Members without any consideration of their dangerousness or risk of absconding from removal proceedings.[5] But the government has "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 94 (2d Cir. 2026) ("While noncitizens can be detained temporarily to 'give[ ] immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity,' that is not what is going on here, where detention is mandatory regardless of these risks.") (quoting Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)).

Considering the above, this Court found the government's expansion of § 1225(b)(2)(A) to mandate the detention of millions of undocumented noncitizens living in the United States, many of whom, like Petitioner, are "neighbors, spouses, mothers, fathers, and grandparents of American citizens," Jacobo-Ramirez, 2026 WL 879799, at *2, raises serious constitutional concerns. See id. at *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members); see also Barbosa da Cunha, 175 F.4th at 94–96 (finding the government's interpretation raised due process concerns including that it "would likely subject" noncitizens "to unconstitutionally prolonged detention,"

---

[5] As explained in greater detail below, infra Part III, Federal Respondents have recently confirmed that they are not conducting initial custody determinations or issuing Form I-286 notices of such determinations to any Class Members.

"compounded by the fact that noncitizens have no right to counsel and are therefore often unrepresented in removal proceedings" and thus "lack the ability to reliably challenge their detention or the conditions in which they are being held."). Many of these constitutional concerns are Petitioner's current reality.

As such, this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause. The procedural protections required under § 1226(a) encompass pre-deprivation notice of the individualized basis for ICE's decision to detain a noncitizen, which is "subject to numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210. As illustrated below, Petitioner's arrest and detention without those protections violates his right to procedural due process. Likewise, the government's failure to articulate a constitutionally recognized interest in detaining Petitioner, including in these habeas proceedings, violates his right to substantive due process. See Zadvydas, 533 U.S. at 690.

**A. Procedural Due Process**

To determine what process is due under the Constitution, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–07 (collecting cases and finding the Mathews test appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation modified).

On balance, these factors weigh heavily in favor of Petitioner. First, Petitioner has a paramount interest in his physical liberty. That interest is especially weighty considering the lack of process he has received, and that was available to him, upon his arrest and throughout his detention. See Rodriguez Diaz, 53 F.4th at 1208 (considering the process the immigration detainee

had already received during his detention pursuant to § 1226(a) and the further process that was available to him in weighing his private liberty interest). Unlike the detainee in Rodriguez Diaz who was afforded the full breadth of procedural protections under § 1226(a), Petitioner has been afforded little to no process at all with regards to the government's determination that he must be detained during the pendency of his removal proceedings.

Second, the risk of an erroneous deprivation of liberty is extraordinarily high under the government's current procedures (or absence thereof), which do not require any individualized determination that Petitioner's detention serves its constitutionally recognized regulatory goals. Nor is Petitioner provided with timely notice and an opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact, in contrast to procedural protections available under other mandatory detention provisions of the INA that apply to noncitizens who are arrested within the interior of the country and not while arriving[6] at its borders (like Petitioner). See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)," and where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)).

In contrast, longstanding procedures, which the government has only recently abandoned after thirty years of consistent prior practice, require an administrative warrant, a determination by ICE that Petitioner's detention is justified based on his individual circumstances, written notice of that determination, and a prompt opportunity to be heard by a neutral decisionmaker regarding ICE's determination, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 2026 WL 879799, at *29–31; see also Rodriguez Diaz, 53 F.4th at 1210. These alternate

---

[6] ICE's arrest and detention policy under § 1225(b)(2)(A) specifically instructs arresting ICE officers to treat noncitizens like Petitioner "in the same manner that 'arriving aliens' have historically been treated." Jacobo-Ramirez, 2026 WL 879799, at *8 (quoting the July 8, 2025, internal ICE Memo).

procedures significantly reduce the risk of erroneous deprivation.

Third, the government's interest in enforcing immigration law and presumed interest in detaining noncitizens who pose a danger to their community or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections provided to noncitizens like Petitioner to ensure they are indeed a danger to the community or at risk of absconding. See Escobar Salgado, 809 F. Supp. 3d. at 1160–62. Moreover, the additional procedural requirements afforded under § 1226(a) serve to *reduce* the fiscal and administrative burden of civil immigration detention. See Jacobo-Ramirez, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation modified).

### B. Substantive Due Process

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)). Civil immigration detention violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690 (citation modified) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

To date, the government has not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Thus, the Court finds that his detention violates substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates procedural and substantive due process and is, therefore, unconstitutional.

### III.    REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to months of arbitrary detention in violation of his statutory and constitutional rights, as well as the Jacobo-Ramirez judgment. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (alterations in original) (citation modified). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

Despite being ordered to do so, Federal Respondents have not produced a Form I-286 Initial Custody Determination—and conflicting Form I-200 Administrative Warrants. See Service Order at 3, ECF No. 3. The Court finds the government's failure to produce evidence of a lawfully executed and served individualized pre-deprivation custody determination is a concession that no such record exists as to Petitioner, and he was not afforded procedures required by the INA. See Jacobo-Ramirez, 2026 WL 879799, at *31 ("Class Members are subject to detention under § 1226(a) and its implementing regulations. Defendants must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member. If Defendants deny release on bond or conditional parole after an initial custody determination, Class Members are entitled to custody redetermination(s) before an immigration judge upon request consistent with 8 C.F.R. §§ 236.1(d); 1003.19.").

As Respondents cannot demonstrate that Peitioner was lawfully arrested or received an initial custody determination, the Court finds Petitioner's detention "was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a)." Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025) (ordering a noncitizen's release on this basis and finding a subsequent "bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue[.]"). In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent

bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioner of his freedom. Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified). Immediate release is thus the appropriate remedy for Federal Respondents' "detain first, justify later" approach to Petitioner's liberty, which mangles § 1226(a)'s regulatory framework and due process.

The Court further finds immediate release is the appropriate remedy for Federal Respondents' ongoing defiance of the Jacobo-Ramirez judgment. The Court issued its declaratory judgment and vacated ICE's internal policy of not issuing initial custody determinations to Class Members on March 30, 2026. See Jacobo-Ramirez, 2026 WL 879799, at *33. Petitioner did not receive an initial custody determination; rather ICE detained him without consideration of his dangerousness or flight risk. Over three months have passed since the Jacobo-Ramirez judgment, yet ICE has not conducted an initial custody determination for Petitioner. Put simply, months after a binding judgment that (1) declared Petitioner's detention illegal and (2) vacated the agency policy underlying his arrest and detention, the government has taken no action to cure its unlawful conduct.

In fact, Federal Respondents have recently admitted, in Jacobo-Ramirez, that they are not conducting initial custody determinations or issuing Form I-286 Notices of Initial Custody Determinations to Class Members, even though they acknowledge the declaratory judgment and vacatur require those procedures. See Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Hr'g. Tr. at 17:22–20:10, June 1, 2026, ECF No. 157. The Form I-286 Notice is especially significant because it is served on the detainee at the outset of detention and provides the formal mechanism— a box the detainee may check—to immediately request a custody *redetermination* hearing (*i.e.* bond hearing) before and IJ. See id. Importantly, then, by refusing to issue I-286 Notices, Federal Respondents are depriving Class Members like Petitioner of the ability to immediately and efficiently request a bond hearing in immigration court. As Federal Respondents have explained, the only process currently available for a detained Class Member to request a bond hearing is by mailing a written request to the Executive Office for Immigration Review ("EOIR") from their detention center. See id. at 22:17–30:3. Class Members receive no instructions regarding how to

do so. See id. But If ICE had conducted an initial custody determination and served the Form I-286 Notice upon Petitioner's arrest consistent with 8 C.F.R. § 236.1, he could have immediately requested a bond hearing by simply checking a box.

Moreover, a custody *redetermination* hearing before an IJ without an *initial* custody determination by ICE, flouts the regulatory scheme, which delegates authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer. 8 C.F.R. § 236.1(d) (emphasis added). Accordingly, since ICE continues to enforce its vacated policy, any post-deprivation bond hearing before an IJ does not comply with § 1226(a)'s regulations, or, by extension, the Jacobo-Ramirez judgment.

The only justification Federal Respondents have provided for their noncompliance with the Jacobo-Ramirez judgment is that it "has no coercive effect." Jacobo-Ramirez, No. 2:25-CV-02136-RFB-MDC, Hr'g. Tr. at 45:5–51:10, June 15, 2026, ECF No. 167. Note, Federal Respondents do not assert that their continued enforcement of a vacated policy and disregard for Class Members' adjudicated rights is legally defensible. Instead, they are exploiting the fact that, absent coercive classwide relief, the Court cannot coerce their compliance on a classwide basis through its contempt power. Consequently, in this, and countless other habeas matters filed by Jacobo-Ramirez Class Members, the government, which has yet to file an appeal in Jacobo-Ramirez, is disturbing the longstanding assumption that Executive Branch officials and departments will comply with a declaratory judgment unless and until it is stayed or vacated. See United Aeronautical Corp. v. U.S. Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). More fundamentally, the government is rebelling against the basic principle underlying our constitutional order that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947).

Despite Federal Respondents' open defiance, it is true that the declaratory judgment establishes Petitioner's rights but, standing alone, is not a self-executing command. See Steffel v. Thompson, 415 U.S. 452, 471 (1974) (explaining that a declaratory judgment "is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt."). Similarly, this

Court's vacatur under the APA "does not affect the Government's future actions" and "neither compels nor restrains further agency decision-making." Nat'l TPS All. v. Noem, 166 F.4th 739, 760 (9th Cir. 2026) (citation modified). In the absence of the threat of contempt, Federal Respondents have made clear that they will not conform their conduct to the Jacobo-Ramirez judgment voluntarily. The consequence is not that the lawfulness of Petitioner's detention is uncertain—this Court has already adjudicated it—but that Petitioner requires an appropriate remedy in this habeas proceeding, backed by the Court's contempt power, to give effect to his clearly established rights as a Class Member.

Finally, in fashioning the appropriate remedy, the Court considers the fact that Federal Respondents' disregard for its orders is not unique to the Jacobo-Ramirez judgment. Rather, Federal Respondents have engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters, apparently undeterred by the fact that, in contrast to the non-coercive nature of the declaratory judgment, those orders *are* backed by the Court's contempt power. These violations include, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners as ordered, disregarding deadlines, failing to provide constitutionally adequate bond hearings, and imposing unlawful release conditions. See Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).[7] "By violating this Court's orders, Respondents are undermining their

_____

[7] Since the Court's decision in Jimenez Gomez, the Court has become aware of numerous other instances of Federal Respondents violating this Court's explicit orders. See, e.g., Sira v. Bondi, Case No. 2:26-CV-00828-RFB-DJA, ECF No. 8 (D. Nev. Apr. 21, 2026) (finding the government transferred petitioner out of the district in violation of court order and ordering return); Cortez Diaz v. Blanche, 2:26-CV-01056, ECF No. 10 (D. Nev. Apr. 29, 2026) (same); Yanes-Quijada v. Mattos, Case No. 2:26-CV-01221-RFB-NJK, ECF No. 16 (D. Nev. May 7, 2026) (finding the government failed to certify a lawful basis for a Class Member's detention in response to an order to show cause, failed to produce documents or certify they do not exist, etc., and ordering Petitioner's immediate release "given the egregious nature of his unjustified detention"); Garcia Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816 (D. Nev. May 9, 2026) (finding the petitioner remained in detention in violation of the Court's Order and equitably estopping ICE from taking fundamentally inconsistent positions in federal habeas proceedings and immigration court); Cruz Perez v. Bondi, No. 2:26-CV-00316-RFB-DJA, ECF No. 31 (D. Nev. May 15, 2026) (finding the IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ, and ICE unilaterally imposed surveillance monitoring in violation of agency regulations and due process); Malta De Sa v. Mullin, No. 2:26-CV-00594-RFB-MDC, ECF No. 25 (D. Nev. May 19, 2026) (finding DHS and ICE unilaterally imposed burdensome release

credibility and the rule of law. Their conduct also causes unnecessary trauma and harm to petitioners" and squanders this Court's finite resources. Id.

For all these reasons, the Court will not ratify the government's lawless conduct by ordering a bond hearing. While ordering a prompt bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, under these circumstances the Court declines to prolong Petitioner's unlawful detention any further. Ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications" and would inadequately remedy the harms Petitioner has suffered. Zheng v. Rokosky, --- F. Supp. 3d. ---, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.") (citation omitted). Moreover, ordering a bond hearing would provide Federal Respondents with yet another opportunity to violate this Court's Orders and due process.[8]

conditions on the petitioner in violation of the Court's explicit order prohibiting them from doing so); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with the Court's conditional writ requiring a constitutionally adequate bond hearing and enforcing the Writ by ordering the petitioner's release); Bibiano v. Blanche, 2:26-CV-00927-RFB-BNW, ECF No. 19 (D. Nev. May 21, 2026) (despite ICE being given 24 hours to release Petitioner, they failed to provide advanced notice of the petitioner's release, and the petitioner could not be located by his counsel); Changyi v. Leyva, 2:26-CV-01280-RFB-MDC, ECF No. 21 (D. Nev. June 6, 2026) (petitioner was held in detention for an additional three days, despite having been granted bond and ordered immediately released by the immigration judge). This list is far from exhaustive.

[8] In related habeas matters where the Court has issued a conditional writ, providing Federal Respondents an opportunity to cure the petitioner's unlawful detention through a constitutionally adequate bond hearing, DHS and the immigration courts have repeatedly defied the dictates of those orders, requiring post-judgment enforcement. See, e.g., Diaz v. Mattos, No. 2:26-CV-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026) (enforcing conditional writ after Federal Respondents asserted 8 U.S.C. § 1226(c) did not apply to Petitioner in response to his habeas petition, and then the immigration court denied

The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward, in the event they seek Petitioner's re-detention under § 1226(a). Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks Petitioner's re-detention under § 1226(a), Federal Respondents must provide him with *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court and BIA's compliance with a district court's conditional writ ordering a bond hearing "under the Due Process Clause" wherein the government was required "to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing" to continue the petitioner's detention) (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of law and Petitioner's rights to date.

### IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioner from detention **ON PERSONAL RECOGNIZANCE on July 8, 2026,** between the hours of **12:00 and**

---

Petitioner release on bond under § 1226(c) after a Court-ordered bond hearing); Cruz Perez v. Blanche, No. 2:26-CV-00315-RFB-DJA, Order Enforcing Writ, ECF No. 31 (D. Nev. May 15, 2026) (finding both DHS and the IJ openly defied the Court's requirement that the evidentiary burden be shifted to the government at the Court-ordered bond hearing, and that DHS' unilateral imposition of ankle monitoring defied agency regulations and the Court's order); Salazar-Lopez v. Mullin, No. 2:26-CV-00871-RFB-MDC, 2026 WL 1414066 (D. Nev. May 20, 2026) (finding the IJ failed to address the requirement that the evidentiary burden be borne by the government at the Court-ordered bond hearing); Alfaro Cruz v. Bernacke, No. 2:26-CV-00080-RFB-BNW, 2026 WL 1414096, at *4 (D. Nev. May 20, 2026) (finding Federal Respondents obviously failed to comply with this Court's conditional writ, which required the government to bear the evidentiary burden at Petitioner's bond hearing).

**3:00 p.m.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** that Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Parties must file a **JOINT STATUS REPORT** by **July 10, 2026,** confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

The Clerk of Court is kindly instructed to update the docket to reflect the Parties as listed in the Amended Petition, see Petition at 1, ECF No. 9, enter judgment accordingly, and close this case.

///

///

The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** July 7, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**